[Civ. No. 9404. Third Dist. Oct. 29, 1958.]

EDWARD MAXWELL JASPER et al., Appellants, v. ALFRED N. DAVIS, as County Treasurer, etc., et al., Respondents.

Allen R. Moltzen, Bryant & Moltzen and John A. Gorfinkel for Appellants.

Edmund G. Brown, Attorney General, William J. Power, Deputy Attorney General, Scott K. Carter, District Attorney (Sonora), and Edmund L. Gorgas for Respondents.

VAN DYKE, P. J.—The county of Tuolumne took proceedings to participate in, and to make its employees members of, the State Retirement System, hereinafter called "system." When the statutory proceedings had been completed, the county entered into the statutory "contract" with the Board of Administration of the system, hereinafter called "board." This action was brought by certain taxpayers of the county to obtain a court decree adjudging that the contract was void because of certain alleged irregularities in the proceedings. Section 20450 of the Government Code provides that any public agency, such as a county, may participate in and make all or part of its employees members of the system by proceedings leading to a contract between its governing body and

the board. The following sections provide that when the governing body of a public agency desires to consider the participation of the agency in the system it shall ask the board for a quotation of approximate contribution to the system which would be required of the agency for such participation. When the agency has received this information and if it then desires to participate its governing body is required to adopt a resolution giving notice of such intention. This resolution is required to contain a summary of the major provisions of the proposed retirement plan. The agency must then hold an election to permit its employees proposed to be included in the system to express by secret ballot their approval or disapproval of the retirement proposal. (Gov. Code, § 20457.) Prior to the election the agency must receive and make available to its employees a schedule of the rates of contribution of members. The ballot used at the election must include the summary of the retirement plan as set forth in the resolution and the election must be conducted by the agency in such manner as it prescribes, which shall be such as to permit the firemen, the policemen, the county peace officers, and the other employees proposed to be included in the system, to express separately their approval or disapproval. (Gov. Code, § 20457.) The agency may not include in the system any of the said four groups, the majority of whose members vote to disapprove the proposed plan.

The trial court entered a judgment, upholding the validity of the statutory contract, the execution of which followed the statutory proceedings, and the plaintiffs appealed.

Although in their pleadings the appellants asserted a number of irregularities had occurred in the proceedings, most of these claims were either expressly abandoned in open court or were impliedly abandoned by the failure of appellants to introduce any evidence in support thereof. The issues tried revolved around appellants' contentions that the ballots used at the election did not include the summary of the retirement plan as set forth in the resolution of intention and that the election was not conducted in such manner as to permit each employee proposed to be included in the system to express by secret ballot his approval or disapproval of the proposed plan.

There were two groups of county employees proposed to be included. Of the first group made up of county peace officers there were five. Of the second group made up of all other

674

county employees, hereinafter called "miscellaneous employees," there were 138. Only two of the peace officers appeared and voted. By the miscellaneous employees there were cast 92 votes in favor of the plan and 26 votes in disapproval thereof.

Both the resolution of intention and the two ballot forms used by the two groups of employees contained summaries. Appellants do not complain that the summary of the proposed plan contained in the resolution of intention was not sufficient in itself to meet the requirements of the statute. Our examination of that summary convinces us that it was adequate. It cannot be expected that in summarizing the 1,500 or so sections of the Government Code whereby the Legislature has provided for the retirement of state employees, which statutory plan for retirement necessarily furnishes the basis for the retirement proposal to be voted on by the electors when a public agency desires to participate in the state plan, the summary could be anything other than a most abbreviated one. That of necessity it must be much abbreviated is also shown by the requirement that the summary be printed on the ballot forms. Only the barest outline of the retirement plan would be intelligible to the voting employees. The summary appearing in the resolution of intention adequately met the statutory requirements and served their purpose. It was brief, but within the approximations necessitated by the statutory scheme it told the employees the essential features of the plan, including how much the plan would cost them, how much they would receive, and when they would receive it.

While not challenging the adequacy of the summary appearing in the resolution, appellants do say that the summary appearing on the ballot forms differed in material points from the summary appearing in the resolution and, therefore, the statutory requirements were not met. There were some differences, but we agree with the trial court which found that these differences were neither substantial nor apt to confuse the voters. We cannot agree with appellants in their argument that the statutory requirements must be followed to the letter else the resulting statutory "contract" will be void. We will first discuss the major variations which do appear. Paragraph 11 of the resolution summary was omitted from the summary that appeared upon the ballots given to miscellaneous employees. This omission was proper since the paragraph had to do solely with the contributions required of safety members, and was of no concern to the miscellaneous

employees. There were in effect under the statutes as many separate elections to be held as there were groups of employees proposed to be included. In this case there were two groups and it was proper to give to each group ballots to be used by members of that group. This was done. The paragraph having to do with contributions to be made by peace officers was included in the summary that appeared upon ballots prepared for them. It was omitted and should have been omitted from the ballots of the miscellaneous employees, for to have included it in those ballots would only have been confusing. It is true that the summary which thus appeared on the ballots of the miscellaneous employees was not "the summary" appearing in the resolution of intention insofar as it thus omitted the paragraph pertinent to peace officer participation. The statutory requirement that the summary contained in the resolution of intention must also appear on the ballots was substantially complied with and that was enough.

This was not, as appellants contend, a situation calling for the application of the rule that where a statute prescribes the procedure by which a public agency may enter into a contract the procedure must be strictly followed, since in such cases the mode is the measure of the power to contract. The so-called "contract" which a public agency enters into with the board when its employees are blanketed into the system is not at all the type of contract which is the subject of the stated rule. The statutory "contract" here involved possesses few of the essentials of a commercial contract. The system is one whereby contributions by the employees and by the state (or, as here, by the participating agency) purchase certain benefits determined, and periodically redetermined as to cost, by actuarial computations. The employee gets what the employee and the state or the agency pay for. The public contributions become a part of employee compensation for services. When a public agency blankets its employees into the system, the so-called "contract" which it executes is nothing more than its undertaking to collect the required contributions from its employees and, adding thereto the requisite amount of its own funds, pay the money to the board. The amount it must turn over to the board is initially computed and from time to time recomputed by the same actuarial methods used in computing and recomputing the contributions of the state's employees and of the state. The amount of contributions required for agency participation may differ from, may even exceed, the contributions of the state's em-

ployees and of the state, because the actuaries must, in computing the cost of the benefits to be derived, consider the smaller number of employees involved and the differing risks of their environment. ■ We think that these considerations make it clear that we have not here the type of contract wherein the statutory procedure must be literally complied with, but, on the other hand, have a situation where substantial compliance is sufficient. ■ So we say as to the variance or irregularity we are now discussing that the omission from the miscellaneous ballot forms of the paragraph of the resolution of intention which concerned only peace officers amounted to no material irregularity and, in fact, in our view, its omission was proper in order that the purpose of the statutory requirement that the ballots contain the resolution summary could be achieved, which purpose, of course, was to give information to be considered by the electors in casting their ballots.

■ Appellants' second claim of irregularity again has to do with a supposed inconsistency between the resolution summary and the ballot summary. They charge that two different base periods for computing final compensation were designated in the two summaries. As originally enacted, the retirement law provided only what is known as the 1/70th at 65 money value formula which was designed to provide the employee who retires at age 65 with 35 years of service a retirement allowance that in theory should approximate one-half of the average salary earned by him during his last five years of service. There was no guarantee that the allowance would equal one-half the salary, but rather the amount was dependent upon the employee's contributions. Through the years the law was liberalized until at the present time the most advantageous plan provides a guaranteed retirement allowance at age 60 after 30 years of service of one-half of the average salary of the three highest consecutive years paid to the employee. These more liberal provisions were added to the law not in place of the earlier provisions but in addition thereto. The result is that a contracting agency may choose one of several plans which will vary slightly in the amount of contributions required to obtain the varying benefits being purchased. There are also optional provisions which may be included in the plan adopted. These statutory provisions allow, (1) the use of a three-year base period rather than a five-year period (Gov. Code, § 20024.01), (2) the inclusion of all of the employees' compensation in computing retirement

benefits rather than limiting benefits to the first $416.66 per month (Gov. Code, § 20025), and (3) the granting to employees of the right to receive retirement credit for time spent in service prior to becoming a member of the system (Gov. Code, § 20804.5). All three of these optional features were adopted by Tuolumne County. The non-guarantee 1/70th at 65 formula remains as the basic plan and a local agency whose agreement with the system did not specify otherwise would be afforded coverage on this basis. (Gov. Code, §§ 21250, 21251 and 21252.) The resolution summary, apparently attempting to give as much information as possible, was designed to fit the basic plan, while noting that certain other features were available on an optional basis. The summary appears to be a standardized form of summary furnished public agencies by the board, and it seems to have been the practice to use this standardized summary in all cases and to note the optional provisions proposed to be adopted by the contracting agency in each case in a copy of the proposed contract attached as an exhibit to the resolution of intention.

In paragraph 3 of the resolution summary the following appears: ''3. The monthly retirement allowance payable upon retirement for service is dependent upon such factors as age, sex, salary, and years of service. For Local Safety Members retiring at age 55 in paragraph 2, or at a higher age with 20 years of service, the monthly allowance is approximately one-half the average monthly salary (salary over $416.66 being excluded unless agency elects otherwise) during the five years immediately preceding retirement, unless the Public Agency elects to provide prior service benefits at less than the full amount. For other Agency employees, the monthly allowance, upon retirement at age 65 if the Agency elects 60 as the lowest optional service retirement age, is 1/70th of the average monthly salary during the five years immediately preceding retirement, for each year of service after the effective date of participation, plus approximately 1/70th, or less as may be provided in said contract by the Public Agency for its employees, of 'Final Compensation' or the average monthly salary during the three years immediately preceding the effective date of participation, for each year of service prior to that date. Upon retirement at age 60, if the Agency elects 55 as the lowest optional service retirement age, the fraction is approximately 1/60th instead of 1/70th, or exactly 1/60th, if the guaranteed fraction also

is elected. The fractions are reduced for both current and prior service if retirement is below 60, and increased only for current service, if retirement is above 60."

Paragraph 14 of the contract form reads as follows: "14. The provisions of Section 20024.01 of the State Employees' Retirement Law, which provided that 'final compensation' shall mean the highest average annual compensation earnable by a member during any period of three consecutive years during his membership in the System, SHALL APPLY to employees of Public Agency who become members of said Retirement System."

Government Code, section 20024.01, which allows the use of a three-year base period, is, as has been mentioned, an optional provision in the retirement law and the county adopted it rather than the standard five-year period. Anyone reading the resolution of intention would recognize paragraph 14 of the contract form exhibit thereto as a proviso or exception to the more general language that is found in paragraph 3 of the resolution. A reading of the resolution and of the exhibit shows that the county proposed to use the three-year period and the contract executed does so. There is thus no discrepancy between the summary and the ballot for miscellaneous employees. What has been said also applies to appellants' contention that there is no indication as to whether salary over $416.66 should be excluded for retirement purposes. The contract form showed that a part of the proposed plan was the adoption of, and the county did adopt, the provisions of Government Code, section 20025, providing that where the contracting agency so elects the entire salary of the employee shall be considered for retirement purposes.

Appellants' third specification of irregularity is designated as "eligibility for disability retirement." Under this point it is argued that paragraph 5 of the resolution of intention states that 10 years of service is required to be eligible for this benefit. Paragraph 5 of the resolution does so state, but it also makes reference to paragraph 10 thereof, which provides that a member who has $500 on deposit is eligible for disability benefits. This and other designations of alleged irregularity are really attacks upon the resolution summary as not being sufficiently complete and detailed. A sufficient answer has already been made herein. The statute requires only a summary. The entire statutory scheme for retirement is far too extensive and far too complicated to permit all details to be given in an intelligible summary.

As noted, the statute requires that the resolution of intention contain a summary, that the summary be repeated in the ballot forms, and that there be made available to the electors a schedule of contribution of members. These requirements were met. The statute also provides that the election shall be held in such manner as the agency shall decide. It appears in evidence that prior to the election all of the employees of the county were required to attend a meeting at which they were addressed by a speaker familiar with the state retirement system. Most of the employees attended this meeting. Other information in the form of brochures and pamphlets were distributed prior to the election. There appears to have been an effort on the part of the county and of those interested in the proceedings to procure and make available to the county employees all information necessary to enable them to vote intelligently. Seizing upon various minor discrepancies in the brochures and pamphlets, when compared with the summaries, appellants argue that the result was the utter confusion of the employees who were to vote. Strangely enough, however, if such confusion did exist no one who voted was sworn to testify as to its existence. The trial court found that the asserted confusion did not exist. We think it unnecessary to follow appellants further in their arguments based upon these matters. The trial court found that in all essential matters the proceedings taken by the county measured up to the requirements of the statutes, that the election was fairly conducted and that the ensuing contract was valid. From the record presented we hold that these findings of the trial court are amply supported.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.